IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**STEVEN G. BUTLER**,

        Plaintiff,

   v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

        Defendant.

No. 3:13-cv-02156-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff Steven Butler claims that due to his health, he is entitled to receive Disability Insurance Benefits ("DIB") under Title II of the Social Security Act covering from December 1, 2005 until March 31, 2008, his date last insured ("DLI"). (Tr. 163, 314; 42 U.S.C. §§ 401–33.) Mr. Butler's claim was initially rejected on May 24, 2010, but the Appeals Council granted his request for review and remanded the case for further administrative proceedings. (Tr. 163–71, 180–84.) On January 25, 2013, after further review, the ALJ issued another decision finding that Mr. Butler was not disabled in the relevant time period, and therefore denied his application for DIB. (Tr. 35–51.) On June 4, 2014, the Appeals Council denied Mr. Butler's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration.

    Mr. Butler seeks judicial review of a final decision of the Commissioner in which she denied Mr. Butler's application for DIB. This Court has jurisdiction to review the

1 – OPINION AND ORDER

Commissioner's decision pursuant to 42 U.S.C. § 405(g). Mr. Butler claims the Administrative Law Judge ("ALJ") erred by: (1) improperly weighing and evaluating several medical opinions, (2) finding that Mr. Butler lacked credibility, and (3) determining that Mr. Butler has a greater residual functioning capacity ("RFC") than he really has. I find that an important portion of the ALJ's RFC determination appears to lack support in the record; therefore, this Court REMANDS the decision of the Commissioner for further consideration or clarification.

## ISSUES PRESENTED

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920. Each step is potentially dispositive. In Step One, the claimant is not considered disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *See Yuckert*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(b). The ALJ found that Mr. Butler has not been engaged in a substantial gainful activity since December 1, 2005. (Tr. 38.) This is not in dispute.

In Step Two, the claimant is not considered disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; *see also* 20 C.F.R. § 416.920(c). The ALJ found that although Mr. Butler has a number of medically determinable impairments, no single impairment or combination of impairments significantly limited his ability to perform basic work related activities, and therefore he was not disabled as defined by the statute.( Tr. 38; 20 CFR § 404.1521.) Mr. Butler contends that the ALJ improperly weighed and evaluated the available medical evidence in making this determination. (Pl.'s Motion [25] at 1–2.)

In Step Three, the claimant is considered disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as "Listings," are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). The ALJ found that Mr. Butler's impairments did not meet or were not medically equivalent to any of the impairments on the Listings. Tr. 40–41. Mr. Butler again argues that the ALJ improperly weighed and evaluated the available medical evidence in making this determination. (Pl.'s Motion [25] at 2–3.)

If the Commissioner proceeds beyond Step Three, she must assess the claimant's RFC. The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a); *see also* SSAR 96-8, 61 Fed.Reg. 128 (July 2, 1996). The ALJ determined that through his DLI, Mr. Butler had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to moderate noise intensity level as defined by the SCO;[1] he has sufficient concentration to understand, remember and carryout simple repetitive tasks and complex tasks; he can work frequently and superficially with the general public; he can work in proximity to an unlimited number of coworkers but not in coordination with them.

(Tr. 42.)

In Step Four, the claimant is not considered disabled if the Commissioner determines the claimant's RFC enables him to perform work he has done in the past. *Yuckert*, 482 U.S. at 141–42; *see also* 20 C.F.R. § 416.920(e). The ALJ found that Mr. Butler was not capable of performing past relevant work. This is not disputed.

---

[1] The ALJ provided examples of what this means, including "a business office, where typewriters are used; a department store; a grocery store; light traffic; [and] fast food restaurants off hours." Tr. 109.

3 – OPINION AND ORDER

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141–42; *see also* 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 146 n.5; s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not considered disabled. 20 C.F.R. § 416.920(f). After consideration of the entire record, which included the testimony of a VE, the ALJ found that Mr. Butler had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant number in the national economy, for example the occupation of electronics technician. (Tr. 49–50.) Mr. Butler contests this finding, arguing that there are not currently any jobs that he could perform in the national economy because the training and experience that he once had is now antiquated. (Pl.s Reply [27] at 8.)

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. *Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1457 (9th Cir. 1995). The court must weigh all of the evidence whether it supports or

4 – OPINION AND ORDER

detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40.

## ANALYSIS

### I.     Mr. Butler's Credibility

After considering all of the evidence on the record, the ALJ found that "[Mr. Butler]'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Mr. Butler]'s statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible . . . ." (Tr. 43–44.) The ALJ based this finding on what she considered to be several inconsistencies in the record regarding Mr. Butler's accounts of his symptoms, limitations and the efficacy of his medical treatment. (Tr. 44.) Mr. Butler challenges the ALJ's finding that he lacks credibility. (Pl.'s Motion [25] at 4–6.)

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chafer*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests that complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Where a claimant's testimony concerning the intensity, persistence, or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider six additional factors to assess that testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Those factors include: (1) daily activities;

5 – OPINION AND ORDER

(2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; and (6) functional restrictions. (*Id.*)

After considering these six factors, I find no reason to reject the ALJ's credibility finding. The ALJ found that Mr. Butler's claims of anxiety, such that he cannot be around other people, to lack credibility given his ability to travel. (Tr. 45.) During the period at issue, Mr. Butler travelled several times between Washington and Alaska. (*Id.*) In order to appear for his final hearing with the ALJ, Mr. Butler traveled eight hours by bus with fifteen to twenty other people on the bus. (*Id.*) The record contains no evidence that Mr. Butler required any medical attention either prior to or after these trips, or that he had any other less serious issues as a result of his travel. (*Id.*) The ALJ found that "the ability to travel requires significant physical and mental stamina, indicative of the ability to persist, and also requires the ability to be around others under stressful conditions, indicative of the ability [] to get along with coworkers in a job situation." (*Id.*) The ALJ seemed to imply that this cut against Mr. Butler's description of the severity of his symptoms, and the extent to which they prohibited him for participating in the work force. I find that this conclusion is supported by "substantial evidence" as defined by the court in *Flaten*, and therefore decline to overturn this portion of the ALJ's credibility finding. *Flaten,* 44 F.3d at 1457.

The ALJ also found that Mr. Butler's daily living activities were inconsistent with his claims of an inability to participate in the workforce. (Tr. 47.) The record contains a Social Security Administration Function Report that Mr. Butler completed on January 15, 2008. (Tr. 369–76.) In this report, Mr. Butler states that during the relevant period he was able to "get outside & work cleaning up things on [his] RV site," as well as drive himself in his own car to

6 – OPINION AND ORDER

grocery shop. (Tr. 371–72.) In response to a question that asked whether he could clean, do laundry and complete other household chores, Mr. Butler answered that he could do those things, but that he did not feel like it. (Tr. 371.) Again, I find that this report constitutes "substantial evidence" as defined by the court in *Flaten*, and therefore decline to overturn this portion of the ALJ's credibility finding. *Flaten,* 44 F.3d at 1457.

## II.    ALJ's Evaluation of the Medical Evidence

Mr. Butler next contends that the ALJ failed to properly weigh and evaluate the medical evidence available in this case. (Pl.'s Motion [25] at 1–6.) Several doctors have provided opinions as to Mr. Butler's condition and his capacity to participate in the work force. The ALJ is responsible for resolving conflicts in medical testimony. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006); *Ellund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). There is an established hierarchy for evaluating medical opinions in this type of case. Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If there are reasons to doubt the credibility or relevance of a particular doctor's opinion supported by substantial evidence, the ALJ may discount a doctor's opinion despite the established hierarchy. I will discuss the ALJ's treatment of each doctor's opinion below.

### A.    *Dr. William Martin*

Mr. Butler objects to the weight that the ALJ gave to Dr. Martin's opinion that Mr. Butler was severally disabled. (Tr. 49.) The ALJ discounted Dr. Martin's opinion because it was rendered more than three years after Mr. Butler's DLI. (Tr. 680.) According to Dr. Martin's

7 – OPINION AND ORDER

medical opinion, he had several appointments with Mr. Butler from April, 2002 until January, 2006. (*Id.*) After that, Mr. Butler failed to meet with Dr. Martin until January 14, 2011. (*Id.*) Given that Mr. Butler is seeking DIB from December 1, 2005 until March 31, 2008, it is not surprising that the ALJ would discount his opinion. Dr. Martin was not having regular appointments with Mr. Butler during almost the entire damages period. Although Dr. Martin would be familiar with Mr. Butler's condition leading up to the relevant time period, he would have no idea whether or not Mr. Butler's condition improved during that time to the point that he could have reasonably participated in the work force. Although normally a treating physician's opinion, such as that of Dr. Martin, is given the greatest weight in this type of case, Dr. Martin's lack of personal evaluation of Mr. Butler constitutes "substantial evidence" for discounting his opinion. I do not find any error in the ALJ's decision to discount Dr. Martin's opinion.

### B.    *Dr. Susan Clark*

Mr. Butler objects to the ALJ's evaluation of Dr. Clark's opinion, arguing that the ALJ gave this opinion too much weight. (Pl.'s Motion [25] at 3, 6.) Dr. Clark is a psychiatrist that Mr. Butler met with off and on from April, 2002 until May, 2007. (Tr. 617.) Dr. Clark stated in her notes that Mr. Butler was frustrating to work with because "he sabotages himself by discontinuing medications, using alcohol, isolating in Alaska, and not following through on therapy or weight loss surgery." (Tr. 618.) Mr. Butler was so non-compliant that Dr. Clark made the decision to terminate her care of him. (*Id.*) Mr. Butler argues that he did not discontinue using his medications, but rather Dr. Clark changed his medications each time he visited her, so he never knew what medications he should be taking. (Pl.'s Motion [25] at 3.) There is no support in the record for this assertion.

As a treating physician, the general hierarchy establishes Dr. Clark's opinion as the most persuasive opinion available in this case as to Mr. Butler's condition. The Dr. Clark's opinion seems to suggest that some of the severity of Mr. Butler's condition was his own fault, and that if he had simply stayed on his medications, his condition would have improved. The ALJ relied on this opinion in her determination of Mr. Butler's RFC. (Tr. 49.) I find no error in this and Mr. Butler has failed to raise any issue with this conclusion that is supported by facts in the record.

C.   *Dr. Brenda Havellana*

Finally, Mr. Butler argues that the ALJ did not give enough weight to the opinion of Dr. Havellana. (Pl.'s Motion [25] at 1.) Although the record is unclear, Dr. Havellana appears to be an examining physician that was ordered by the court to evaluate Mr. Butler. The ALJ gave little weight to Dr. Havellana's opinion that Mr. Butler's combination of "cognitive and psychiatric presentation would likely make consistent and successful engagement in a vocation setting moderately to markedly challenging." (Tr. 608.) The ALJ discounted this opinion because Dr. Havellana offered this opinion in 2010, nearly two years after the relevant period, and was unable to offer any opinion regarding Mr. Butler's functioning during the relevant time period. (Tr. 48.) I find no error in this decision because it seems reasonable to assume that Mr. Butler's condition in 2010 would not be very probative as to his condition from December 2005, until March, 2008.

Defendant's counsel agrees with the ALJ's decision to discount the first potion of Dr. Havellana's opinion, and also points out that a later portion of Dr. Havellana's opinion further supports the ALJ's final decision regarding Mr. Butler's DIB claim. (Def.'s Response

[26] at 8.) Dr. Havellana opined that Mr. Butler, despite the limitations that she expressed above, had:

> strengths that would prove beneficial in a vocational setting including, he is able to understand, remember, and follow, more than two step instructions, he presented with average attention and concentration abilities on brief assessment measures, and during the current assessment he exhibited the ability to interact appropriately with public contracts.

(Tr. 609.) I find, however, that it would be inappropriate for me to consider this portion of Dr. Havellana's opinion, given that it is clear from the ALJ's written opinion that she did not expressly rely on this portion of Dr. Havellana's opinion in reaching her result. (Tr. 48.)

I therefore conclude that the ALJ properly discounted Dr. Havellana's medical opinion as to the impact of Mr. Butler's cognitive and psychiatric presentation on his ability to work. I further conclude that that I should reject the second portion of Dr. Havellana's opinion as support for the ALJ's decision because there is no evidence in the record that this portion of Dr. Havellana's opinion had any impact on the ALJ's final determination regarding Mr. Butler's claims.

### D.   *Dr. Yong-Bing Shi*

Finally, Mr. Butler objects to the ALJ's use of Dr. Shi's 2005 opinion. (Pl.'s Motion [25] at 4.) Mr. Butler argues that he did not have an appointment with Dr. Shi in 2005 and that this medical record documents an appointment with a different Steven Butler. (*Id.*) I find this position to be devoid of merit. The only piece of evidence that Mr. Butler has in favor of his position is a June 10, 2014 letter written by Dr. William Martin of the Oregon Health & Science University stating that there had been some errors in Mr. Butler's medical records; Mr. Butler's records had been mixed with the records of another patient with the same name. (*Id.* at 7.) Dr. Martin states that the records have been corrected. (*Id.*) Mr. Butler, however, has never provided this court

10 – OPINION AND ORDER

with the corrected medical records, and so I have no evidence that this particular record in fact belongs to the other Steve Butler, and not the Mr. Butler before the court today. All evidence, however, that can be gleaned from this record suggests that it belongs to the Mr. Butler before the court today. The record describes a man who: (1) has the same birthday as Mr. Butler; (2) first came to the clinic in April of 2002 complaining of tinnitus; (3) is morbidly obese; (4) was at one point planning on going to Mexico for a surgical procedure to control his weight; and (5) suffered from depression. (Tr. 450–51.) I find it beyond the realm of possibility that this record could belong to another Steven Butler who somehow was inflicted at the same time and with the same condition as the Mr. Butler before the court today and who shares all the same characteristics listed above. I reject any objection that Mr. Butler has made to the ALJ's use of this record.

### III.     Mr. Butler's Residual Functioning Capacity and Ability to Enter the Work Force

#### A.     *Residual Functioning Capacity*

As stated in the introduction above, I find that a portion in the ALJ's determination of Mr. Butler's RFC does not appear to be supported by substantial evidence in the record. Therefore, on this basis, I remand this case for further consideration or clarification.

The ALJ determined that through his DLI, Mr. Butler had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to moderate noise intensity level as defined by the SCO; he has sufficient concentration to understand, remember and carryout simple repetitive tasks and complex tasks; he can work frequently and superficially with the general public; he can work in proximity to an unlimited number of coworkers but not in coordination with them.

(Tr. 42.) The majority of Mr. Butler's objections to the ALJ's determination of his RFC are all rebutted by either his own actions, his own statements in his medical records, or the medical opinions discussed above. Specifically, Mr. Butler's apparent ability to travel, his own

11 – OPINION AND ORDER

statements in his Social Security Administration Function Report about his ability to grocery shop and clean up his RV site, and the lack of medical evidence to establish his claims of physical and mental disability support the ALJ's RFC determination. (Tr. 45, 369–76.)

The ALJ, however, does not appear to cite any evidence to support the portion of the RFC that states that Mr. Butler "has sufficient concentration to understand, remember and carryout simple repetitive tasks and complex tasks . . ." (Tr. 42.) The only evidence in the record that appears to support this statement is the latter portion of Dr. Havellana's opinion that the government cites in its brief. That portion of Dr. Havellana's opinion states that Mr. Butler "is able to understand, remember, and follow, more than two step instructions, [and] he presented with average attention and concentration abilities on brief assessment measures . . ." (Tr. 609.) The ALJ, however, was clear that she was giving little weight to Dr. Havellana's opinion. (Tr. 48.) Therefore, on remand, the ALJ must explain the evidentiary basis for this portion of the RFC. She must either identify the evidence in the record outside of Dr. Havellana's opinion that supports this portion of the RFC, or she must explain the seemingly inconsistent treatment of Dr. Havellana's opinion. It is not uncommon for an ALJ to give different weight to different portions of a doctor's opinion based on the medical evidence supporting each portion of the opinion. However, the ALJ must justify this type of seemingly inconsistent treatment, and no such justification is currently in her written decision.

### B.    *Ability to Enter the Work Force*

Without knowing the full evidentiary basis for the RFC, I am unable to review whether or not the ALJ's decision that Mr. Butler is able to do other work that exists in the national economy is correct or not. That decision is based entirely on the RFC. I withhold any judgment

12 – OPINION AND ORDER

on this portion of the ALJ's decision until after I receive the further clarification regarding the RFC ordered above.

## CONCLUSION

For the foregoing reasons, I REMAND this case to the ALJ. The ALJ must clarify the evidentiary basis for the portion of the RFC identified above. Without that clarification, I am unable to properly review the ALJ's analysis at step five.

IT IS SO ORDERED.

DATED this __19th__ day of November, 2014.

/s/ Michael W. Mosman____
MICHAEL W. MOSMAN
United States District Court

13 – OPINION AND ORDER